1

2

3

4

5 **UNITED STATES DISTRICT COURT**

6 **EASTERN DISTRICT OF CALIFORNIA**

7

8  SHEILA SANDERS,                          CASE NO. 1:13-CV-1380-SMS

9              Plaintiff,

10       v.                                 ORDER GRANTING PLAINTIFF'S
                                            SOCIAL SECURITY APPEAL AND
11 CAROLYN W. COLVIN, Acting               REMANDING ACTION FOR FURTHER
   Commissioner of Social Security,        ADMINISTRATIVE PROCEEDINGS
12
13              Defendant.
                                            (Doc. 17)
14

15

16       Plaintiff Sheila Sanders, by her attorneys, Dellert Baird Law Offices, PLLC, seeks judicial

17 review of a final decision of the Commissioner of Social Security ("Commissioner") denying her

18 application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security

19 Act (42 U.S.C. § 301 *et seq.*) (the "Act").  The matter is currently before the Court on the parties'

20 cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder,

21 United States Magistrate Judge.  Following a review of the complete record and applicable law,

22 this Court finds the decision of the Administrative Law Judge ("ALJ") includes legal error and the

23 record is not fully developed to provide substantial evidence to support the nondisability

24 determination.

25   **I.   Background**

26       A.  Procedural History

27       On September 10, 2010, Plaintiff applied for supplemental security income.  Plaintiff

28 alleges onset of disability on June 20, 2006.   The Commissioner initially denied the claims on

1   March 17, 2011, and upon reconsideration again denied the claims on May 31, 2011.  On July 1,

2   2011, Plaintiff filed a timely request for a hearing.

3         On January 31, 2012, and represented by counsel, Plaintiff appeared and testified at a

4   video hearing presided over by Daniel Heely, Administrative Law Judge ("the ALJ").  *See* 20

5   C.F.R. 416.14 29 *et seq.*  An impartial vocational expert, George Meyers ("the VE"), also

6   appeared and testified.

7         On February 15, 2012, the ALJ denied Plaintiff's application.  The Appeals Council denied

8   review on July 3, 2013.  The ALJ's decision thus became the Commissioner's final decision.  See

9   42 U.S.C. § 405(h).  On June 23, 2014, Plaintiff filed a complaint seeking this Court's review

10   pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

11       B.  Relevant Facts

12         Plaintiff was born on May 1, 1954. At the administrative hearing, Plaintiff testified that she

13   worked at a plant nursery as a cashier clerk in 2001, 2002, and 2003. She also worked with a temp

14   agency in 2003. Plaintiff was incarcerated for approximately six years, during which time she

15   worked in the corrections facility as a seamstress and firefighter.

16         Plaintiff testified that there was no full-time job she thought she could handle, mostly

17   because of physical pain in her ankles and low back. Her biggest concern was being able to make

18   it through the day physically. Plaintiff constantly felt pain in her neck and low back, which was

19   helped "some" by Vicodin. She testified that she could be on her feet for an hour at the longest,

20   and had to lie down approximately two hours out of every eight or nine hours.

21         Plaintiff was being treated for posttraumatic stress disorder ("PTSD"), depression, and

22   bipolar disorder. Plaintiff initially testified that she would be able to focus at a job for eight hours

23   a day with breaks. She then testified that her depression and anxiety would cause her to be angry,

24   emotionally withdrawn, and unable to focus.

25         Plaintiff lived with her disabled brother and did her own chores including preparing meals,

26   washing dishes, and doing laundry. She was unable to mop because it hurt her back. Plaintiff liked

27   to watch movies and sometimes watched TV. She did not own a computer but she occasionally

28   would play solitaire on the computer or look up things online in order to help her nephew. Plaintiff

1  had a driver's license but did not own a car, so she got rides or took the bus to go grocery

2  shopping.

3       C.   Relevant Medical Record

4       In June 2006, Plaintiff suffered a fall, causing neck and back pain. She was prescribed

5  medication and underwent physical therapy. In February 2007, an orthopedic surgeon diagnosed

6  Plaintiff with having cervical disc degeneration with superimposed strain. In March and October

7  2007, MRIs revealed foraminal stenosis and multi-level degenerative disc disease of the lumbar

8  spine and a normal thoracic spine. No surgery was recommended. After 2007 and until 2011,

9  Plaintiff did not receive any treatment for her axial spine.

10      In 2011, Plaintiff continued to experience pain in her neck and back. In January 2011,

11  consultative examiner Dr. Fariba Vesali performed an orthopedic examination and completed a

12  functional assessment. AR 383-386. Dr. Vesali opined that Plaintiff could walk, stand, and sit six

13  hours in an eight-hour workday with breaks every twenty minutes for stretching. She could lift or

14  carry fifty pounds occasionally and twenty-five pounds frequently. He limited Plaintiff to

15  occasional crouching and climbing and did not assess any manipulative limitations.

16      In March 2011, Dr. W. Jackson reviewed Plaintiff's file and completed a Physical Residual

17  Capacity Assessment. His functional assessment was similar to Dr. Vesali's in that he opined that

18  Plaintiff could walk, stand, and sit approximately six hours in an eight-hour workday with breaks,

19  limited Plaintiff to occasional crouching, climbing and other postural limitations, and did not

20  assess any manipulative limitations. The main difference in the two opinions is that Dr. Jackson

21  assessed that Plaintiff was only able to lift or carry twenty pounds occasionally and ten pounds

22  frequently.  Dr. Jackson's assessment places Plaintiff functional capacity in the "light" range,

23  whereas Dr. Vesali's places her in the "medium" range.

24      Also in 2011, Plaintiff began to complain of depression to physician assistant Leslie

25  Halseth. This is the first time mental health issues appear in the record. Plaintiff was referred to

26  social worker, C. Bitonti, in June 2011. She underwent her first psychiatric consultation with a

27  psychiatrist, Dr. Naldony, in July 2011. Dr. Naldony diagnosed Plaintiff with depression, PTSD,

28  and opioid dependence. He prescribed Zoloft and Lithium. In September 2011 Plaintiff reported to

1  Ms. Halseth that she only took the medications for a few days and discontinued. In October 2011,

2  Plaintiff returned for treatment with Ms. Bitonti after several months of absence. Plaintiff again

3  indicated that she had stopped taking the medications prescribed by Dr. Naldony and expressed a

4  desire to "just go to counseling."  She continued to refuse medication in December 2011. She also

5  refused an appointment with Dr. Naldony. AR 452-461. Also in December 2011, Ms. Bitonti

6  noted that an appointment was made with a new integrated behavioral health clinician. However,

7  no there are no records from any further mental health treatment.

8        D.  <u>Vocational Expert Testimony</u>

9        At the administrative hearing, the VE classified Plaintiff's past full-time work as

10  horticultural worker (DOT # 405.687-014, heavy, unskilled, SVP 2). For the first hypothetical

11  question, the ALJ directed the VE to assume a hypothetical person of the same age, education, and

12  work history as Plaintiff, who could sit for six hours but stand and/or walk for less than two hours

13  in a workday; lift and/or carry less than ten pounds occasionally; never climb, balance, stoop,

14  kneel, crouch, crawl, or work around hazards; would need numerous unscheduled rest breaks; and

15  would not have sufficient concentration for simple, routine tasks. The VE opined that there were

16  no full-time jobs for this hypothetical person.

17        For the second hypothetical question, the ALJ directed the VE to assume a hypothetical

18  person of the same age, education, and work history as Plaintiff, who could sit, stand, and walk six

19  hours in an eight-hour workday with normal breaks, lift and/or carry fifty pounds occasionally and

20  twenty-five pounds frequently, occasionally crouch and climb, and was limited to jobs involving

21  simple, routine types of tasks with occasional public contact. The VE opined that this hypothetical

22  person could not perform Plaintiff's past job of horticultural worker, but could perform other work

23  of hand packer (DOT # 920.587-018, medium, unskilled, SVP 2), cleaner (DOT # 919.687-014,

24  medium, unskilled, SVP 1), and laundry worker (DOT # 361.685-018, medium, unskilled, SVP 2).

25        For the third hypothetical question, the ALJ directed the VE to assume the same

26  hypothetical person as described in the second hypothetical but without the limitation of

27  occasional public contact. The VE opined that this hypothetical person could perform Plaintiff's

28  past work as horticultural worker as performed, and the jobs mentioned in the second hypothetical.

Plaintiff's attorney asked the VE to assume the same hypothetical person as described in the third hypothetical, but who would need to go away from the workplace and stretch for five minutes every twenty minutes. The VE opined that there would not be any jobs available for that person. There also would not be any jobs available for a person who needed to stretch for one minute off and on for twenty minutes, or for a person who needed to be seated for twenty minutes and then standing or walking for twenty minutes in shifts.

E.   Disability Determination

After considering the evidence, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. He found that Plaintiff had degenerative disc disease, anxiety, PTSD, and depression which significantly limited her ability to perform basic work activities. The ALJ found that Plaintiff did not have an impairment that met or medically equaled the severity of a listed impairment. He found that Plaintiff had the residual functional capacity ("RFC") to perform "medium work" as defined in 20 C.F.R. 416.967(c), with the following limitations: only jobs involving simple routing types of tasks, sit/stand/walk for six hours in an eight-hour workday with normal breaks; lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; and could occasionally crouch and climb. The ALJ concluded that Plaintiff was capable of performing her past relevant work as a horticultural worker. In the alternative, considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. Hence, he determined that Plaintiff could make a successful adjustment to other work and was found "not disabled."

**II.   Discussion**

Plaintiff raises two main issues for appeal. First, Plaintiff argues that the ALJ improperly assessed Plaintiff's physical RFC because he failed to consider reviewing physician Dr. Jackson's functional capacity opinion. Second, Plaintiff argues that the ALJ improperly assessed Plaintiff's mental impairments and mental functional capacity because the record was incomplete and the ALJ's conclusions were therefore unsubstantiated.

\\\

A.  The Five-Step Sequential Analysis

An individual is considered disabled for purposes of disability benefits if she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment(s) must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f).  In the five-step sequential review process, the burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five. *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Id.* at 1098–99; 20 C.F.R. §§ 404.1520, 416.920.

In the first step of the analysis, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C .F.R. §§ 404.1520(b), 416.920(b).  If not, in the second step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c).  If so, in the third step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments, 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d).  If not, in the fourth step, the ALJ must determine whether the claimant has sufficient RFC, despite the impairment or various limitations to perform his past work. *Id*. §§ 404.1520(f), 416.920(f).  If not, in step five, the burden shifts to the Commissioner to show that the claimant can perform

1    other work that exists in significant numbers in the national economy.  *Id*. §§ 404.1520(g),

2    416.920(g).

3        B.  <u>Standard of Review</u>

4        Congress has provided a limited scope of judicial review of the Commissioner's decision

5    to deny benefits under the Act.  The record as a whole must be considered, weighing both the

6    evidence that supports and the evidence that detracts from the Commissioner's decision.

7    *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks

8    omitted).  In weighing the evidence and making findings, the Commissioner must apply the proper

9    legal standards.  *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  If an ALJ

10   applied the proper legal standards and the ALJ's findings are supported by substantial evidence,

11   this Court must uphold the ALJ's determination that the claimant is not disabled.  *See, e.g., Ukolov*

12   *v. Barnhart*, 420 F.3d 1002, 104 (9th Cir. 2005); *see also* 42 U.S.C. § 405(g).  Substantial

13   evidence means "more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of*

14   *Soc. Sec.*, 528 F.3d 1194, 1998 (9th Cir. 2008).  It is "such relevant evidence as a reasonable mind

15   might accept as adequate to support a conclusion."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

16   2005). Where the evidence as a whole can support either outcome, the Court may not substitute its

17   judgment for the ALJ's; rather, the ALJ's conclusion must be upheld. *Id*.

18       C.  <u>Plaintiff's Physical RFC</u>

19       Plaintiff contends that the ALJ's physical RFC analysis was flawed because the ALJ

20   adopted Dr. Vesali's opinion regarding Plaintiff's functional capacity without discussing Dr.

21   Jackson's conflicting opinion. The Commissioner responds that the ALJ implicitly rejected Dr.

22   Jackson's opinion in favor of Dr. Vesali's, and that Dr. Vesali's opinion was supported by

23   substantial evidence and may be afforded greater weight as an examining source.

24       Physicians render two types of opinions in disability cases: (1) clinical medical opinions

25   regarding the nature of the claimant's impairments and (2) opinions on the claimant's ability to

26   perform work.  *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "An ALJ is not bound

27   by an expert medical opinion on the ultimate question of disability." *Tomasetti*, 533 F.3d at 1041;

28   S.S.R. 96-5p.  Three types of physicians may offer opinions in social security cases: "(1) those

1   who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the

2   claimant (examining physicians); and (3) those who neither examine[d] not treat[ed] the claimant

3   (nonexamining physicians)." *Lester*, 81 F.3d at 830. A treating physician's opinion is generally

4   entitled to more weight than the opinion of a doctor who examined but did not treat the claimant,

5   and an examining physician's opinion is generally entitled to more weight than that of a

6   nontreating physician. *Id.*

7   An ALJ is not required to discuss every piece of evidence in the record. *Howard v.*

8   *Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d

9   1393, 1394-95 (9th Cir. 1984). However, the ALJ must explain why "significant probative

10  evidence has been rejected." *Vincent*, 739 F.2d at 1395. "The RFC assessment must always

11  consider and address medical source opinions. If the RFC assessment conflicts with an opinion

12  from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-

13  8p, 1996 SSR LEXIS 5 (SSR 1996); *see also* § 416.927(a)(2); *Nixon v. Astrue*, 2010 U.S. Dist.

14  LEXIS 96218 (C.D. Cal. 2010)("All opinions from acceptable medical sources must be

15  considered.") "Where an ALJ does not explicitly reject a medical opinion or set forth specific,

16  legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v. Colvin*,

17  759 F.3d 995, 1012 (9th Cir. 2014).

18  Here, the record contained two medical opinions on Plaintiff's ability to work. Dr. Vesali

19  was an examining physician, and Dr. Jackson was a nonexamining, or reviewing, physician. The

20  ALJ discussed Dr. Vesali's opinion and gave it "significant weight" because they were the result

21  of an in-person examination with testing and because Dr. Vesali was board certified in physical

22  medicine and rehabilitation. The ALJ did not agree with Dr. Vesali's opinion that Plaintiff

23  required breaks every twenty minutes for stretching because of Plaintiff's testimony that she could

24  be on her feet for up to sixty minutes. Therefore, the ALJ's RFC analysis adopted the physical

25  functional capacity delineated by Dr. Vesali except without requiring breaks every twenty

26  minutes. The ALJ's decision contained no discussion of Dr. Jackson's opinion, which came to

27  almost all of the same conclusions as Dr. Vesali's opinion regarding Plaintiff's functional

28  capacity, except that he felt that she could lift and carry significantly less than did Dr. Vesali.

1    Dr. Jackson's opinion is probative evidence from an acceptable medical source and must

2    be considered. Because Dr. Jackson's opinion is an acceptable medical source and conflicts with

3    the RFC, the ALJ was required to explain why it was rejected. Had the ALJ considered this

4    opinion, he may have reached a more restrictive physical RFC assessment, which would affect the

5    availability of work that Plaintiff could perform. Therefore, the matter will be remanded in order

6    for the ALJ to consider Dr. Jackson's functional capacity opinion in the RFC assessment.

7    D. Plaintiff's Mental Impairments and Limitations

8    Plaintiff contends that, because there was no medical opinion regarding Plaintiff's mental

9    limitations, the ALJ erred at step three of the sequential evaluation, in arriving at Plaintiff's mental

10   RFC, and in his duty to develop the record. The Commissioner responds that the ALJ properly

11   analyzed Plaintiff's mental health records, which did not establish any mental functional

12   limitations, and properly accommodated mental functional limitations by limiting her to simple

13   repetitive tasks.

14   1. Applicable Law

15   The claimant bears the burden of demonstrating disability. *Bowen v. Yuckert*, 482 U.S.

16   137, 146 n. 5, (1987). However, the ALJ has a duty to assist in developing the record when there

17   is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

18   evidence. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *Armstrong v. Commissioner of*

19   *Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998); 20 C.F.R. §§ 416.912(d)-(f); *see also Sims v.*

20   *Apfel*, 530 U.S. 103, 110-11 (2000). The duty to develop the record is not triggered in the event of

21   a silent record that does not support disability. *Armstrong* at 589. "ALJs are to seek additional

22   evidence or ask the claimant to undergo further consultative examinations if there is consistent

23   evidence of an impairment but the evidence is not sufficient for the ALJ to determine whether the

24   claimant is disabled." *Rochin v. Barnhart*, 204 Fed. Appx. 601, 603 (9th Cir. 2006)(citing 20

25   C.F.R. 416.927(c)(3)). In particular, when there is evidence indicating the existence of a mental

26   impairment, a determination of nondisability shall be made only if the Commissioner has made

27   "every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the

28   medical portion of the case review and any applicable residual functional capacity assessment." 42

U.S.C. 421(h).

Failure to order a consultative examination when such examination is necessary to make an informed decision is reversible error. *Reed v. Massanari*, 270 F.3d 838, 845 (9th Cir. 2001). Where the ALJ failed to develop the record, remand is appropriate so that the record may be developed. *See* 42 U.S.C. 405(g); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)("If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.").

2. *Analysis*

Here, the medical evidence covering Plaintiff's mental impairments is rather sparse and spans approximately seven months in 2011. During these seven months, Plaintiff had three appointments with a social worker, one appointment with a psychiatrist, and several notes taken by a physician's assistant. The psychiatrist prescribed medication for depression and PTSD, which Plaintiff only took for a few days. She indicated a desire to continue counseling, but there is no evidence that she continued. There is no mental functional capacity assessment in the record. In spite of this sparse record, the ALJ found that Plaintiff's anxiety, PTSD, and depression were severe impairments at step two. At step three, the ALJ considered the "paragraph B" criteria in order to find that Plaintiff did not have an impairment that met a listing. First, the ALJ found that Plaintiff had moderate restriction in activities of daily living because she was able to watch TV and do some housework. Second, the ALJ found that Plaintiff had moderate difficulties in social functioning because she was able to live with others. Third, the ALJ found that Plaintiff had moderate difficulties in concentration, persistence, or pace because she could use a computer, watch a movie, and drive. Lastly, the ALJ found that Plaintiff had experienced no episodes of decompensation of extended duration.

The ALJ then evaluated Plaintiff's RFC. He noted that the RFC assessment requires an itemization of various functions contained in the paragraph B categories; however, he only discussed Plaintiff's activities of daily living and her ability to focus. He did not discuss her capacity in social functioning. In addition, the ALJ did not rely on a mental functional capacity assessment from a medical source. The ALJ concluded, without discussion, that Plaintiff had the

mental RFC to perform simple routine tasks.

The ALJ's mental impairment and limitations analysis is substantially lacking. The only mention of Plaintiff's social functioning in the ALJ's decision is that she lives with her brother, which indicates moderate ability in social functioning because she is able to live with others. However, the record also indicates that Plaintiff lived with her daughter and son-in-law upon release from incarceration, but her daughter "kicked her out," and in October 2011 she was living with two people who were using drugs. AR 454. The ALJ resolved this by saying that her problems with her daughter "may be situational, and not medical, in nature." Plaintiff testified that she does not engage in social activities outside the home, but also that she helped her nephew and "other people" drive her to the store.

The record is insufficient to make proper conclusions regarding Plaintiff's mental functioning. The evidence may more strongly support a finding that Plaintiff moves often and is unable to live with others. However, without a consultative examination, the evidence is insufficient to make proper findings. In this case, a consultative examination is necessary in order for the ALJ to make an informed disability determination. The ALJ was obligated to develop the record in order to make proper mental severity and functional capacity assessments. A qualified medical provider's opinion is likely to have an effect the ALJ's outcome at step three and the RFC assessment. Hence, the matter will be remanded for further proceedings in order that the ALJ may order a consultative examination and conduct a proper analysis at step three and Plaintiff's mental RFC.

**III.   <u>Conclusion and Order</u>**

Upon a careful review of the full record, the Court is unconvinced that Plaintiff is disabled. Yet, however reluctantly, the Court must remand because the ALJ's nondisability determination includes legal error and the record is not fully developed to provide substantial evidence to support the nondisability determination.  Accordingly,

**IT IS HEREBY ORDERED:**

1.   that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security (Doc. 1) is **GRANTED**.

2.  pursuant to sentence four of 42 U.S.C. § 405(g), that the matter is **REMANDED** for further proceedings consistent with this decision; and,

3.  the Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Sheila Sanders and against Defendant, Carolyn Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   __**February 16, 2015**__                    _____**/s/ Sandra M. Snyder**__
                                                              UNITED STATES MAGISTRATE JUDGE